# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
SHRI GAYATRI, LLC,                             )
                          Plaintiff            )
                                               )
          v.                                   )
                                               )          C.A. NO. 13-40153-TSH
                                               )
THE CHARTER OAK FIRE INSURANCE COMPANY,        )
                          Defendant.           )
_____)


## MEMORANDUM OF DECISION AND ORDER FOR ENTRY OF JDUGMENT
### September 12, 2016


**HILLMAN, D.J.**

### Introduction

Shri Gayatri, LLC ("Shri Gayatri") filed suit against The Charter Oak Fire Insurance

Company ("Charter Oak") seeking a declaratory judgment that that it is entitled to an award for

Replacement Cost Value of the loss owed and Ordinance and Law loss under an insurance

policy, Policy Number I-660-7496M38A-COF-10 ("Policy") issued to Shri Gayatri that covered

a commercial property owned by it and operated as a motel at 66-68 Haynes Street, Sturbridge,

MA. More specifically, the property was a Days Inn consisting of four buildings, which housed

thirty-four (34) rooms, and a pool ("Property").   Shri Gayatri has also asserted claims for breach

of the implied covenant of good faith and fair dealing, and violation of the Massachusetts

Consumer Protection Act, Mass.Gen.L. ch. 93A, §§2,11 and Mass.Gen.L. ch. 176D, §§

3(9)(f),(g) ("Chapter 93A claim").   Charter Oak has filed a Counterclaim seeking a declaratory

judgment that it has no obligation to pay Shri Gayatri for: (1) the difference between the replacement and actual cash value for any property loss or damage; and (2) the increased cost of construction of building, zoning and use ordinance.   This Memorandum of Decision and Order For Entry Of Judgment addresses Defendant's Motion For Summary Judgment (Docket No. 47). For the reasons set for the below, that motion is granted.

## **Relevant Policy Provisions**

### Replacement Cost

The Policy contains the following provisions relevant to replacement cost coverage:

**4. Loss Payment**

**a.**      In the event of [covered] loss or damage … at our option, [Charter Oak] will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

[Charter Oak] will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.**      The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any properly, except as provided under the increased Cost of Construction or Repair Additional Coverage.

….

**6.      Valuation**

[Charter Oak] will determine the value of Covered Property in the event of covered loss or damage as follows:

a.      At actual cash value as of the time of the loss or damage,

       ….

The Policy further provides "Replacement Cost" as an "Optional Coverage,", in relevant

part, as follows:

**3. Replacement Cost**

a.      Replacement Cost (without deduction for depreciation) replaces the term Actual Cash Value provisions in **a., e.** and **h**. of the Loss Condition, Valuation, in Section E.6. of this Coverage Form.

       ….

d.      You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis … .

e.      [Charter Oak] will not pay on a replacement cost basis for any loss or damage:

**(1)**      Until the lost or damaged property is actually repaired or replaced; and

**(2)**      Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

The Policy contains the following Endorsement as required under Massachusetts law:

C.      Paragraph 3.e. of the REPLACEMENT COST Optional Coverage is replaced by the following:

e.      [Charter Oak] will not pay on a replacement cost basis for any loss or damage:

**(1)**      Until the lost or damaged property is actually repaired or replaced:

(a)      On the described premises; or

(b)      At some other location in the Commonwealth of Massachusetts;

**(2)** Unless the repairs or replacement are made within a reasonable time, but no more than 2 years after the loss or damage.

Ordinance or Law Coverage

The Policy contains the following provisions relevant to ordinance of law coverage:

**2.** The following coverages are added … Each of these Additional Coverages is additional insurance unless otherwise indicated.

**a. Ordinance or Law**

**(1)** If a Covered Cause of Loss occurs to Covered Building Property, [Charter Oak] will pay for:

**(a)** Loss to the Undamaged Portion of the Building caused by enforcement of any ordinance or law that:

**(i)** Requires the demolition   of parts of the same property not damaged by a Covered Cause of Loss;

**(ii)** Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

**(iii)** Is in force at the time of loss.

**(b)** Demolition Cost, meaning the cost to demolish and clear the site of undamaged parts of the Building property caused by enforcement of the building, zoning or land use ordinance or law.

**(c)** The Increased Cost of Construction caused by enforcement of building, zoning or land use ordinance or law, meaning the increased cost to repair, rebuild or construct the property in compliance with the minimum requirements of such ordinance or law. This increased cost of construction coverage is subject to the following provisions:

**(i)** This coverage applies only if:

(A) The Building property is insured for replacement cost;

4

(B)     The Building property is repaired, rebuilt or
        re-constructed; and

(C)     The repaired, rebuilt or reconstructed Building
        property is intended for similar occupancy as the
        current Building property, unless otherwise required
        by zoning or land use ordinance or law.

(ii)     [Charter Oak] will not pay for the Increased Cost of
         Construction:

(A)     Until the Building prop-erty is actually repaired or
        replaced at the same premises or another premises;
        and

(B)     Unless the repairs or re- placement are made as
        soon as reasonably possible after the loss or
        damage, not to exceed two years. [Charter Oak]
        may extend this period in writing during the two
        years.

## **Findings of Fact**[1]

The Policy was a commercial insurance policy effective from September 24, 2010

through September 24, 2011. Charter Oak renewed the Policy on September 24, 2011 and

terminated the renewal Policy pursuant to a notice of cancellation sent to Shri Gayatri on

September 29, 2011. The Policy terminated effective December 3, 2011.

---

[1] Pursuant to L.R, D.Mass. 56.1, the party moving for summary judgment must include a concise statement of material facts of record as to which it contends there is no genuine issue of dispute. The party opposing summary judgment must include a concise statement of material facts of record as to which it contends there exists a genuine issue to be tried.   Plaintiff has included a statement of material facts which purports to set forth those material facts "as to which there exists a genuine issue to be tried."   However, what Plaintiff has actually filed is its own version of the facts in narrative form. More to the point, Plaintiff has made no attempt to highlight for the Court those facts asserted by Charter Oak which it contends are in dispute versus those facts that are undisputed. Consequently, Plaintiff has improperly shifted the burden to the Court to read through both parties' statement of facts and figure out what facts are in dispute. While the Court has made an attempt to isolate the material facts which remain in dispute, because the Plaintiff has failed to comply with L.R. 56.1, the Court has largely adopted Charter Oak's statement of facts. *Caban Hernandez v. Philip Morris USA, Inc*., 486 F.3d 1, 7 (1st Cir. 2007)("In the event that a party opposing summary judgment fails to act in accordance with the rigors that such a rule imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated."); *see also   S. Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc.,* No. CV 12-11663-GAO, 2016 WL 1732720, at *29 (D. Mass. Apr. 28, 2016)(anti-ferreting rules such as Rule 56.1 are designed to reduce burden on trial courts and prevent party from shifting burden to court to organize evidence).
.

On June 1, 2011, the Property sustained damage caused by a tornado (the "Loss"). The damage included fallen trees and roof and structural damage to the four buildings. That same day, Shri Gayatri submitted a claim to Charter Oak.   On June 2, 2011, Charter Oak conducted an initial inspection of the damage to the Property.   Based on the initial inspection, Charter Oak assigned the claim to Gerald Alfieri ("Alfieri"), a General Adjuster in Charter Oak's Property Major Case Unit. Alfieri, on behalf of Charter Oak, retained the following outside consultants to assist in Charter Oak's investigation of the loss: Gary Page ("Page"), of Page Consulting, to assist with an estimate of the building damage; Leonard J. Morse-Fortier, a structural engineer, to assist with a determination of the scope of damages to the buildings; Russell Drummey, a mechanical engineer, to assist with an evaluation of the extent of damages to HVAC systems and other building mechanicals; and Commercial Equipment Insurance Pricing Service to assist with an evaluation of the business personal property loss. Alfieri also requested Walter Shutak, a CPA employed by the Charter Oak claim department, to assist with an evaluation of the business income loss.   On June 3, 2011, Charter Oak conducted a site inspection of the Property. Alfieri indicated that it may take six months or more to restore the Property. Charter Oak's representatives, including Alfieri and Page, visited the Property additional times in June and July, 2011 to investigate the Loss.

<u>Facts Relating to Building Loss</u>

Charter Oak issued two payments dated June 9, 2011 to Shri Gayatri totaling $107,500 as an advance payment on the building loss. A $100,000 payment was made payable jointly to Shri Gayatri and United Bank, the mortgage holder. United Bank held $50,000 and the remaining $50,000 was released to Shri Gayatri for emergency repairs. The $7,500 payment was made jointly to Shri Gayatri, United Bank and John Grenier ('Grenier"), Shri Gayatri's public adjuster; Grenier retained the entire amount.

On Shri Gayatri's behalf, Grenier retained a building estimator, Dennis Walsh ("Walsh"), who worked with Page in June and July, 2011 to arrive at an agreement on the scope of damages. Walsh's estimate, dated July 7, 2011, shows a total replacement cost value of $755,200.20. Shri Gayatri never provided Walsh's estimate to Charter Oak.[2] Page prepared an estimate of the building damage and provided it to Alfieri on or before August 5, 2011. The estimate calculated the total replacement cost value of the building loss to be $647,022.21. Page, who had prior work experience for a construction contractor, based his estimate on figures provided by Xactimate, a computer software program he regularly uses to estimate such losses. Charter Oak prepared a Statement of Loss based on Page's estimate. The Statement of Loss calculated the replacement cost value of the total building loss, including estimated amounts for initial services and tree removal (that were not part of the Page estimate), to be $686,387, with an actual cash value ("ACV") of $509,324. Alfieri shared the estimate and Statement of Loss with Grenier on August 8, 2011. Shri Gayatri was informed by Alfieri that there was no coverage for fences, retaining walls and paved surfaces damaged by wind. On the same day, Alfieri also obtained authority from his supervisor to pay Shri Gayatri the undisputed ACV loss.

Charter Oak issued payments dated August 8, 2011 to Shri Gayatri totaling $396,824 (a check for $367,062 and a check for $29,762) for the building loss and $40,089 for business personal property losses. Shri Gayatri did not deposit the $367,062 check until March 22, 2012. Shri Gayatri did not challenge Charter Oak's August, 2011 estimate of the building loss, either in its evaluation of the scope of damages or the cost of making repairs. In mid-August, 2011, Shri

---

[2] In its statement of disputed facts, Shri Gayatri states that Patel did not know that Grenier had hired Walsh and was not aware of his estimate. Shri Gayatri hired Grenier and gave him authority to act as its agent. Given that Grenier had actual authority to act on Shri Gayatri's behalf, it would have been reasonable for Charter Oak and Page to assume that Walsh also had the authority to act on behalf of Shri Gayatri. Shri Gayatri does not argue that Walsh did not have actual or at least apparent authority to act on its behalf. For this reason, the Court is unclear as to the legal significance of Patel's lack of knowledge that Grenier hired Walsh to assist with providing Charter Oak a loss estimate.

Gayatri retained Tocci Building Companies ("Tocci"), a company that builds hotels, to prepare an estimate of the loss. Shri Gayatri did not inform Charter Oak that it had retained Tocci to prepare an estimate.

On or about August 28, 2011, the Property sustained additional property damage caused by Tropical Storm Irene. Shri Gayatri did not report the additional damage caused by Tropical Storm Irene to Charter Oak and Tocci had not inspected the Property prior to the additional damage caused by Irene. Tocci completed its estimate of the cost to repair the building damage ($2,195,426) and provided it to Mr. Jayesh Patel ("Patel"), manager of Shri Gayatri, at the end of September 2011. The estimate was provided to Charter Oak on or about November 9, 2011. On or about October 29, 2011, the Property sustained a third loss caused by an early ice/snow storm ("October Snowstorm"). Again, Shri Gayatri did not report the additional damage caused by this storm to Charter Oak. On November 4, 2011, Alfieri, while driving past the Property, observed that no repairs were in progress. On November 7, 2011, he called Grenier to inquire into the status of the claim and the repairs. Grenier informed Alfieri, for the first time, that the Property had sustained additional damage as a result of the August and October storms. Grenier also informed Alfieri, for the first time, of the Tocci estimate. Grenier provided the Tocci estimate to Alfieri on November 9, 2011.   The Tocci estimate, based on an inspection of the Property that occurred after Tropical Storm Irene, calculated the total replacement cost value of the loss to be $1,945,474. The Tocci estimate did not contain any calculation of the ACV of the Loss.

On November 29, 2011, Charter Oak conducted another inspection of the Property along with representatives of the insured. At this inspection, Charter Oak observed the damage to the Property caused by Tropical Storm Irene and the October Snowstorm for the first time. Charter Oak's representatives also observed that, despite the $509,324 ACV amount Charter Oak had

8

paid to Shri Gayatri on the building loss, Shri Gayatri had not undertaken any repairs other than temporary roof covering, initial removal of wet items, and other minor remediation.

Following the November 29, 2011 inspection, Alfieri asked Page to revise his estimate. Page's revised estimate calculated the replacement cost value of the building loss to be $1,010,655. The major reason for the increase was Charter Oak's determination that one of the buildings in the motel complex was a total loss and needed to be demolished and replaced. In addition, Charter Oak made payment allowances to repair water damage observed in two guest rooms above the eating area in another building, repair additional water damage to the guest rooms on the south side of that building, and repair damage caused by water on the floor in additional rooms in another building. The new water damage claims arose because Shri Gayatri had not adequately protected the buildings on the Property from the elements, leaving them vulnerable to rain and snow damage from Tropical Storm Irene and the October Snowstorm. Charter Oak prepared a revised Statement of Loss based on Page's revised estimate. The revised Statement of Loss calculated the replacement cost of the building loss to be $1,050,020, with an ACV of $808,478. Charter Oak forwarded the revised building estimate and Statement of Loss to Grenier.   On December 9, 2011, Patel received a letter from Wyndham Hotel Group that as of December 3, 2011, the Days in franchise at the Property was cancelled.   On or about December 16, 2011, Patel received a letter from the Town of Sturbridge building inspector stating that it was reasonable to conclude the Property was a total loss.

Charter Oak issued two payments dated February 2, 2012 to Shri Gayatri, totaling $299,154, for the additional ACV of the building loss. On or about February 24, 2012, Patel received a revised estimate from Tocci. The estimate broke down as follows: $1,816,014 to reconstruct the four buildings; $224,753 for site work; $164,917 for septic/pool/well; and $412,039 for code upgrades.   Although it is not clear when, the revised estimate was forwarded

to Alfieri. On March 1, 2012, Charter Oak conducted another inspection of the damage to the Property. As of the March 1, 2012 inspection, Shri Gayatri still had not made permanent repairs to the Property.  According to Patel, he was holding the checks (he had not deposited them) and not initiating repairs due to the *perceived* concerns of United Bank, the mortgage holder. Additionally, Patel did not start repairs because Charter Oak had not provided him with enough funds to rebuild the property. A Mr. Ferolito ("Ferolito") from Tocci was present at the inspection. He compared the Page estimate to Tocci's first and second estimates and concluded that Page had missed a number of items and had priced the work for a number of repairs lower than what Tocci had estimated it would cost to perform the work. It is not clear that Grenier, Ferolito or anyone else associated with Shri Gayatri ever raised these concerns with Page or anyone else from Charter Oak.

Following the March 1, 2012 inspection, Alfieri asked Page to revise his estimate. Page's revised estimate calculated the replacement cost of the building loss to be $1,038,331. The modest increase was based on observations made during the March 1, 2012 inspection and Page's use of an updated price list. Charter Oak prepared a revised Statement of Loss based on the revised estimate. The revised Statement of Loss calculated the replacement cost of the building loss to be $1,082,715, with an ACV of $836,825. Charter Oak forwarded the revised building estimate and Statement of Loss to Grenier. On March 23, 2012, Alfieri met with Grenier and Patel and informed them that once the April payment was made, Charter Oak believed that it did not owe any additional money on the claim, and that the parties should proceed with reference if there was disagreement about whether the proper amount had been paid.   Also on March 23, 2012, Patel requested from Alfieri that Charter Oak exercise its option under the Policy to find and engaged a contractor to repair and rebuilt the Property.   Charter Oak declined to do so. Charter Oak issued additional payments on April 2, 2012 to Shri Gayatri totaling

$23,328 for the building loss. Charter Oak issued a payment dated July 10, 2012 to Shri Gayatri in the amount of $11,359 for remediation services, after Shri Gayatri presented it with documentation of the services. Some of these funds were retained by Grenier to pay his fee and others were sent directly to companies who had performed repair services.

On August 15, 2012, Attorney Caryn L. Daum, on behalf of Charter Oak, sent a letter to Timothy Wickstrom, counsel for Shri Gayatri, stating that "if your client disagrees with the amount of loss as determined by Charter Oak, the amount of loss must be submitted to reference in accordance with the Policy and the procedures set forth in M.G.L. ch. 175, §100, *et seq.*" Attorney Wickstrom replied by letter dated August 30, 2012, in which he stated that "[i]t is the insured's position that reference must be initiated by the insured, not the insurer, pursuant to the statute."

Charter Oak issued payments dated August 27, 2012 to Shri Gayatri totaling $18,956 for business personal property losses (this payment amount was re-issued to Shri Gayatri at a later date because the checks had not been deposited). On or about on October 1, 2012, Shri Gayatri replaced Grenier as its public adjuster and retained David A. Benton ("Benton") in his place. Over the next seven months, Benton attempted to obtain photographs and reports and determine how the damages occurred at the time of loss plus the two subsequent storms. Benton never received any documents from Grenier, and he never spoke with Grenier. Benton also never saw any estimates from Grenier. Benton had no knowledge of what Grenier did during the almost year and a half Grenier worked on the claim on behalf of Shri Gayatri.

By letter dated April 12, 2013, Benton, on behalf of Shri Gayatri, demanded reference on the claim. By letter dated May 20, 2013, Benton asked Charter Oak to extend the two year time period listed in the Policy for Shri Gayatri to repair or replace the damages to the Property. By letter dated May 22, 2013, Charter Oak declined to extend the two-year period set forth in the

Policy for Shri Gayatri to repair or replace the damages to the Property, but agreed that the two-year limitation period to file suit in the Policy would be tolled pending the conclusion of the reference.   Shortly before the reference hearings held between October 17 and 29, 2013, Benton submitted to the referees a Public Adjuster/Loss Consultant memorandum providing an overview of the issues in dispute at the reference.   Benton's memorandum enclosed a Statement of Loss prepared by him. The memorandum and Statement of Loss calculated the replacement cost value of the building loss to be $1,894,047.89, with an ACV $1,569,580.57.   At about the same time, Shri Gayatri also submitted to the reference panel a claim binder containing voluminous invoices and estimates, most of which had not previously been provided to Charter Oak. Specifically, Shri Gayatri produced the following documents to the reference panel, none of which had been previously produced to Charter Oak, either by Benton or Grenier:

a.   a list of incurred emergency repairs totaling $85,232,77;

b.   two cancelled checks to Barry Brothers Landscaping dated June 22, 2011 I the amounts of $22,000 and $750, respectively;

c.   invoice from Peticular Care Cleaning & Restoration dated July 27, 2012 in the amount of $13,923.76;

d.   cancelled check to William Gravel dated July 1, 2011 in the amount of $9,000;

e.   invoices from Stan Kaitbenski dated September 7, 2011, December 6, 2011, December 14, 2011, and December 18, 2012 in the amounts of $2,300, $2,425, $4,800, and $2,000, respectively;

f.   cancelled checks to Howlett Lumber dated December 19, 2011 and April 4, 2012 in the amounts of $3,089 and $2,541, respectively;

g.   checks to Renovation GTC, LLC dated April 14, 2012 and April 18, 2012 in the amounts of $1,600 and $4,000, respectively;

h.   email from Sturbridge Building Inspector to Mr. Patel dated April 17, 2013 regarding compliance with code;

i.   Mid-Point Engineering and Consulting Report letter to Mr. Patel dated April 11, 2013 providing an estimate for civil engineering design fees and improvement costs;

j.   Thompson-Liston Associates, Inc. letter to Shri Gayatri dated April 30, 2013 with a proposal for replacement of the motel;

k.   estimate Prepared by CCG dated April 10, 2012 for repair costs;

l.   A-1 Spectrum Services Invoice dated June 11, 2012 in the amount of $2,650; A-1 Spectrum results of samples dated May 4, 2012 and June 4, 2012; and A-1 Spectrum Inspection Report dated June 10, 2012, in connection with asbestos inspection;

m.   Walsh Environmental Service Invoice dated February 10, 2013 in the amount of $65,000 for asbestos abatement;

n.   GESI Invoice dated January 15, 2013 in the amount of $29,852.86 for keycards and locksets;

o.   Active Telephones, Inc. proposal for telephone and internet services received on August 30, 2011;

p.   HD Supply quote dated January 14, 2013 in the amount of $28,894.32 for HVAC;

q.   KayGee Sign estimate in the amount of $26,228 for signs;

r.   BMA Architectural Group proposal dated March 5, 2012 for architectural and structural services;

s.   Tocci estimated code upgrades totaling $323,451;

t.   HD Supply estimate of furniture/fixtures/equipment/operating supplies totaling $305,587.22;

u.   Chockshi, Mund & Raczkowski, PC email to Mr. Patel dated October 7, 2013 with accountant's bill;

v.   Wyndham Hotel Group letter to Mr. Patel dated December 9, 2011 with acknowledgment of termination of Days Inn license; and

w.   Pinnacle Advisory Group letter to Attorney Wickstrom dated May 14, 2013 with review of impact to hotel due to tornado damage.

Facts Relating To Lost Business Income

Alfieri asked Shutak to prepare an four month business loss estimate, which represented the least amount of time that the Property would be out of service. Shutak did not request a copy of the Days Inn franchise agreement before preparing the estimate. On or about June 29, 2011, Shutak estimated that the business income loss over an eight month period would be $168,000. Charter Oak issued a payment dated July 5, 2011 to Shri Gayatri in the amount of $43,000 for business income loss.

Shutak did not perform any work on the Shri Gayatri file between July 7, 2011 and November 1, 2011. In November 2011, Alfieri requested a new business loss estimate covering the six month period from June 1, 2011 to December 1, 2011. Shutak completed the estimate around November 15, 2011. He calculated a projection of lost sales in the amount of $266,000, which represented an increase of $98,000.00 from his previous estimate of $168,000.   In his calculation, Shutak did not consider rental expense, in the amount of $8,601.22, to be a continuing expense, which resulted in a lower estimate: When rent was not considered a continuing expense, the business income loss was estimated to be $164,391.26 and when it was considered, a continuing expense, the business income loss was estimated to be $173,054.72. On or about November 16, 2011, Shutak informed Alfieri that he estimated the business income loss to be $164,391.28.

On or about January 30, 2012, Shutak sent a business interruption loss report to Alfieri which indicated an eight month business income loss for Shri Gayatri in the amount of $173,905.85. This calculation did not include rent as a continuing expense.

By this time, the rental expense had increased to $11,547.49 and had it been included in

the business loss income calculation, the estimated loss would have been $185,000.00.

On February 10, 2012, Alfieri and Shutak discussed the estimate and concluded that

the sales projection was not as great as Shutak had first calculated-- Shutak had used a

50% growth trend in making his calculation. Shutak had also prepared an estimate that

included a 19.42% increase in monthly revenues/sales. Using the 19.42% growth trend,

Shutak calculated the lost business income to be $131,230.47, excluding rent. A

colleague of Shutak had reviewed the estimate and suggested using an 11.93% growth

trend. Using the 11.93% sales projection figure resulted in a business income loss of

$121,300.04. After talking to Alfieri, Shutak revised his estimate and found the business

lost income to be $121,127.10.   Charter Oak issued a check dated February 13, 2012 to

Shri Gayatri in the amount of $78,127, representing its calculation of eight months of loss

of business income. At the same time, Alfieri acknowledged that the restoration period

was likely to increase from eight to twelve months.

　　　After receiving the February 13th payment, Patel requested that his accountant,

Giris Chokshi ("Chokshi"), review Shutaak's calculation. The worksheet containing

Chokshi's calculations was forwarded to Alfieri[3]. On or about March 1, 2012, Shutak

requested a copy of the Days Inn franchise agreement.   On or about April 2, 2012,

Shutak sent Alfieri a revised estimate, which increased the business income loss to

$158,494.92 for an eight month period.   On or about August 10, 2012, Shutak provided

---

[3] In its statement of material facts Shri Gayatri states that Chockshi's estimate was "significantly higher" than Shutak's.   Inexplicably, Shri Gayatri did not attach a copy of the worksheet as an exhibit, nor did it quote the amount of the estimate.   Instead, Shri Gayatri has simply cited to Patel's sworn affidavit in which he states that Chokshi's calculation was "significantly higher."   Shri Gayatri is seeking to use Chokshi's " significantly higher" estimate to support its Chapter 93A claim against Charter Oak. However, the Court cannot based on the evidence in the record find that Chokshi's estimate was "significantly higher" or even at all higher than Charter Oaks.

Alfieri with a preliminary twelve month estimate of lost business income in the amount
of $222,294.88. On August 27, 2012, Charter Oak issued a business income payment in
the amount of $101,168.00 to Shri Gayatri, representing twelve months of lost income.
This was the last payment Shri Gayatri received until after the reference.

The Reference Panel Decision

On December 4, 2013, the reference panel issued its decision (the "Reference Award"):
(1) the ACV of the Building loss was $1,053,880.35 and the replacement cost was
$1,281,164.35; (2) the ACV of the Business Personal Property loss was $74,305.50 and the
replacement cost was $97,770.00; (3) the ACV of the Appurtenant Building and Structures loss
was $7,750.69 and replacement cost was $9,811.00; (4) the ACV of the Outdoor Property loss
was $10,000 (the Policy limit); (5) the ACV of the Outside Sign loss was $13,307.71 and the
replacement cost was $16,845.20; (6) the Claim Data Expense loss was $2,475.00; (7) the
Business Income and Extra Expense loss was $320,000 (the Policy limit); and (8) subject to
Policy terms and conditions, $260,000 for Ordinance or Law costs.   On December 23, 2013,
Charter Oak issued a payment to Shri Gayatri in the amount of $364,243.55. This amount
represented the difference between the amount listed in the Reference Award as the total ACV of
the loss and the amount previously paid by Charter Oak to Shri Gayatri, less the $5,000 Policy
deductible. It also included the difference in business income loss awarded based on a longer
period of interruption.

Purchase of the Replacement Property

Patel applied for a loan in the spring of 2011 to assist him with his intended purchase of
21 Boston Post Road in Sturbridge, Massachusetts, for a new Holiday Inn Express hotel. When
he applied for the loan, Patel did not request any funds to make permanent repairs at the
Property. In a letter from Shri Gayatri's counsel dated March 3, 2014, approximately two years

and eight months after the tornado loss, Shri Gayatri told Charter Oak, for the first time, that it

had purchased a replacement property located at 408 Main Street, Sturbridge, Massachusetts.

The purchase and sale agreement for the purported replacement property was not executed until

January 15, 2014.   Shri Gayatri "purchased" the property from Om Shri Uma Bhavani, LLC, a

limited liability company owned by Patel. The transaction involved Patel transferring assets

between the two entities he owned. Shri Gayatri did not complete the purchase within two years

of the date of Loss, or within two years of the expiration of the Policy on December 3, 2011.

### Standard of Review

"Summary judgment is appropriate when the moving party shows that there is no genuine

dispute of material fact and the movant is entitled to judgment as a matter of law. In considering

whether or not a genuine issue of material fact exists, the court 'must view the evidence in the

light most favorable to the opposing party.' "Under Massachusetts law, the interpretation of an

unambiguous insurance policy is normally a question of law for the court." *BioChemics, Inc. v.

Axis Reinsurance Co.*, 83 F. Supp. 3d 405, 407 (D. Mass. 2015)(internal citations and citation to

quoted case omitted). The court applies general rules of contract interpretation, and looks first to

the actual policy language, which is "'given its plain and ordinary meaning.'" *Valley Forge Ins.

Co. v. Field,* 670 F.3d 93, 2012 (1st Cir. 2012).    Like all contracts, an insurance policy is to be

construed according to the fair and reasonable meaning of its words. Exclusionary clauses must

be strictly construed against the insurer so as not to defeat any intended coverage or diminish the

protection purchased by the insured. *See Vappi & Co.,* 348 Mass. at 431-432, 204 N.E.2d at 276

(1965).   Thus, where "the relevant policy provisions are plainly expressed, those provisions

must be enforced according to their terms and interpreted in a manner consistent with what an

objectively reasonable ensured would expect to be covered. *Vicor Corp. v. Vigilant Ins. Co.*, 674

F.3d 1, 11 (1st Cir. 2012).

"The insurer bears the burden of demonstrating that an exclusion exists that precludes coverage, and 'any ambiguities in the exclusion provision are strictly construed against the insurer'.   Ambiguity does not exist simply because the parties disagree about the proper interpretation of a policy provision; rather, '[a]mbiguity exists when the policy language is susceptible to more than one rationale interpretation'" *Valley Forge*, 670 F.3d at -- (internal citations and citation to quoted case omitted). Doubts created by any ambiguous words or provisions are to be resolved against the insurer. *August A. Busch & Co. of Mass., Inc. v. Liberty Mut. Ins. Co.*, 339 Mass. 239, 243, 158 N.E.2d 351,354 (1959).

## Discussion

Shri Gayatri seeks a declaration that it is entitled to recover: (1) the difference between the replacement cost of the damaged property and the ACV of that property; and (2) the hypothetical cost of the additional expenses it would have incurred to bring a repaired or replaced building up to the current building code standards if it had actually repaired or replaced the damaged property. Shri Gayatri has also asserted claims for breach of the implied covenant of good faith and fair dealing, and unfair and deceptive trade acts or practices in violation of Chapter 93A.

### Whether Shri Gayatri Is Entitled To Recover The Difference Between The Replacement Cost Of The Damaged Property And The ACV Of That Property And/Or Is Entitled To Payment Under Ordinance Or Law Coverage

Charter Oak has paid Shri Gayatri the amount of the Reference Award, *i.e.,* the ACV (less the $5,000 Policy deductible), for damage to the Property sustained as a result of three distinct weather events which occurred in the 2011 calendar year: a tornado (June 1, 2011), Tropical Storm Irene (August 28, 2011) and the October Snowstorm (October 29, 2011). Shri Gayatri claims that it was entitled to the replacement cost to repair and/or replace the Property and seeks to recover the difference between the replacement cost and the ACV. Shri Gayatri also

asserts that it is entitled to payment under the Ordinance or Law provision of the Policy which entitles it to recover increased costs incurred in connection with the repair and replacement of damaged property in order to bring the repaired/replaced property into minimum compliance with building, zoning or land use ordinance or law (hereafter, "ordinance cost").

Charter Oak asserts that the clear and unambiguous language of the Policy provides that the insured is not entitled to replacement cost or ordinance cost unless the damaged property is repaired or replaced within two years of the date of loss.   Because it is undisputed that Shri Gayatri did not repair or replace the Property within two years of the date of loss, Charter Oaks argues that Shri Gayatri's was not entitled to recover replacement cost or ordnance cost.   I agree with Charter Oaks: The plain language in the Policy provides that Shri Gayatri is not entitled to recover replacement or ordinance cost under the Policy until the damaged property is actually repaired or replaced. Moreover, such repairs or replacement were to be made as soon as reasonably possible and *must* have been completed within two years of the date of loss. Shri Gayatri asserts that it was unable repair and/or replace the Property within two years of the date of the loss because of the actions or inactions of Charter Oak and therefore, Charter Oak is "estopped" from denying coverage for replacement cost and/or ordinance cost.   More specifically, Shri Gayatri argues that it was unable to timely repair and/or replace the Property because Charter Oak made untimely payments on Shri Gayatri's claims and provided unduly low estimates of the cost to repair/replace the Property (based on the insurance estimating program, Xactimate).

Before discussing the merits of Shri Gayatri's claim, the Court must first examine whether Shri Gayatri's reliance on an "estoppel" theory is legally sound. The requirement that the damaged property be repaired or replaced is *a condition precedent* to the insured being entitled to replacement cost and ordinance cost proceeds. That is, the insurer is not liable to pay

either replacement or ordinance unless and until the insured has met all necessary conditions, *i.e.*, repaired or replaced the damaged property. If the time by which the condition must be fulfilled ends the condition remains unsatisfied, the obligor's duty is discharged *unless* the obligor excuses fulfillment of the condition. Charter Oak expressly notified Shri Gayatri in writing that it was not waiving the condition that repair or replacement of the damages Property occur within two years of the Loss. Accordingly, performance of the condition precedent was not excused. Therefore, Shri Gayatri is left to argue that Oak Charter breached its obligations under the Policy and prevented the condition precedent from being met. Moreover, the burden of proof is on Shri Gayatri to establish that Charter Oak prevented it from complying with the condition that that the damaged Property be repaired and replaced within two years of the Loss.

Shri Gayatri essentially asserts that it was unable to timely complete the repairs and restoration of the Property because Charter Oak undervalued the damage to the Property and dragged its heels when making payments reflecting the ACV of the Property, payments reflecting lost business, etc. However, the record does not substantiate Shri Gayatri's assertions. Charter Oak promptly viewed the damage to the Property after Shri Gayatri made its initial claims and made numerous follow-up inspections of the Property. It was as a result of these follow-up inspections that Charter Oak discovered that the Property was further damaged by Tropical Storm Irene and the October Snowstorm since Shri Gayatri had never filed claims with Charter Oak regarding damage caused by these events. Charter Oak also provided Shri Gayatri with ongoing estimates of the ACV of Property was well as its estimates of the cost to repair and rebuild. Page's estimate was within $100,000 of the estimate prepared by Walsh (who was hired by Grenier to assist with the process of valuing the damage to the Property). While there may have been some minimal lag time, Charter Oak sent checks to Shri Gayatri within a reasonable time of assessing the loss. Some of those checks were retained by United Bank, the Mortgagor

and some went directly to companies who had provided repair services. Additionally, Patel retained some of the funds rather than initiate repairs because he *perceived* that United Bank had some unspecified concerns. Funds in the amount of $367,062 which Charter Oak issued to Shri Gayatri in August 2011, were not deposited until March 2012. Shri Gayatri received an estimate from Tocci in September 2011, yet it did not forward that estimate to Charter Oak until November 9, 2011.   Moreover, Tocci *grossly* overestimated the ACV and replacement cost, primarily because its figures reflected a complete restoration of the Property, not just the repair or replacement of damaged Property. Over nine months after the Property was damaged by the tornado, Shri Gayatri had not made any permanent repairs. In March 2012, Charter Oak informed Shri Gayatri that it had paid its claim in full and advised it that if it was unsatisfied, they should proceed with reference.   On August 15, 2012, Charter Oak made a formal written demand for reference. However, Shri Gayatri took the position that only the insured can demand reference and declined to participate.   On October 1, 2012, Shri Gayatri replaced its public adjuster, Grenier, with Benton. Benton then spent *seven* months investigating the damage done to the Property by the tornado, Tropical Storm Irene and the October Snowstorm. Benton never spoke to Grenier, nor did he obtain any files from Grenier. On April 12, 2013, almost eight months after Charter Oak had attempted to do so, Shri Gayatri demanded reference. Over a month later, on May 20, 2013, Shri Gayatri requested that Charter Oak agree to extend the two year limitation for repairing or replacing damages to the Property.   Charter Oak declined, but agreed that that the time *for bringing suit* would be tolled until after reference had concluded. At this time, Shri Gayatri had not made *any* permanent repairs.

The reference proceedings were held from October 17 through October 29, 2013.   Shri Gayatri submitted an estimate that the replacement cost was $1,894.047.89 and ACV of $1,569,580.57. Shri Gayatri also submitted a claim binder which included a substantial number

of invoices and estimates which had never been provided to Charter Oak.   The reference panel
made the following award:

> Building loss and damage: Replacement cost $1,281,164.35; ACV $1,053,880.35

> Business Person Property: Replacement cost: 97,770; ACV $74,305.50

> Appurtenant Building & Structures: Replacement cost $9,811; ACV $7,750.69

> Outdoor Property: $10,000 (exceeded policy limit)

> Outside Sign: Replacement cost $16,845.20; ACV $13,307.71

> Claim Data Expense:  $2,475.00

> Business Income & Extra Expense: $320,000.00

> Ordinance Law: $260,000

The award included modest amounts for which Charter Oak and not made any previous
payments or offered payment, *i.e.,* appurtenant building and structures, outdoor property, and
claim data expense. The reference determined that it would take eighteen months to complete the
restorations.   The reference panel determined that Charter Oak had underpaid Shri Gayatri on its
claim by $369,243.55 of which $97,705 was for loss of business income. While this was a fairly
substantial underpayment, it is *significantly* less than the amount which Shri Gayatri contended it
was due.   On December 23, 2013, Charter Oak sent Shiri Gayatri a check for $364,243.55,
which reflected the difference between what Charter Oak had previously paid Shiri Gayatri and
the ACV of the loss determined by the reference panel (less the policy deductible). On March 3,
2014, Shri Gayatri informed Charter Oak that it had purchased a replacement property at another
location in Sturbridge, MA. The purchase took place on January 14, 2014, which was over two
years after the Loss.

   I find that when viewing this evidence in the light most favorable to Shri Gayatri, it has
failed to meet its burden of establishing that there is a genuine issue of fact as to whether Charter

Oak prevented it from satisfying the condition that it timely repair and replace the damaged Property. On the contrary, the undisputed evidence establishes that Charter Oak acted reasonably promptly in investigating the loss, providing its estimate and paying the claim. However, as discussed above, Shri Gayatri was always one or two steps behind. Much of the delay was attributable to Shri Gayatri's dissatisfaction with the people it hired to pursue its claim, or a lack of communication with its agents. Charter Oak can hardly be faulted for Shri Gayatri changing public adjuster's mid-stream and essentially starting the process anew.[4]  Charter Oaks can also not be faulted for Patel inexplicably holding checks totaling over $360,000 for *months* due to his own perception that United Bank had some concerns. Additionally, Charter Oak cannot be faulted for failing to pay estimates and invoices which Shri Gayatri presented for the first time to the reference panel. Finally, after being advised of Charter Oak's final estimate of replacement cost and ACV damages, Shri Gayatri's delayed almost a year before demanding reference. Given the totality of these circumstances, I cannot find that Shri Gayatri's failure to timely repair or replace the damaged Property was due to any action or inaction on the part of Charter Oak.[5]

---

[4] It is telling that: (1) Patel claims that he was not aware that Grenier had hired Walsh and that the estimate that Walsh and Page discussed was not forwarded to Charter Oak; (2) that Patel was unaware that the Tocci estimate was not provided to Charter Oak until November 9, 2011, despite the fact it was provided to him (Patel) at the end of September; and (3) on October 1, 2012, after Charter Oak had notified Shri Gayatri that it had paid the claim in full, Shri Gayatri hired a new public adjuster, Benton who never spoke to Grenier after he was hired or obtained a copy of Grenier's files.

[5] Were the Court to apply Shri Gayatri's estoppel theory, for substantially the same reasons that I find that it has failed to establish that Charter Oak prevented it from complying with the condition precedent that it repair or replace the damaged Property within two years, I would find that Shri Gayatri has failed to establish that Charter Oak is estopped from denying coverage for replacement cost and ordinance cost. More specifically, an insurer will become estopped from denying coverage, if it says or does something which is "intended to induce conduct on the part of its insured; the insured … act[s] or refrain[s] from acting in reasonable reliance on the insurer's representation; and the insured … suffer[s] some detriment as a result. Estoppel often turns on determinations of fact, but where the relevant facts are established, the court may treat the issue as a question of law." *Clermont v. Cont'l Cas. Co.*, 778 F. Supp. 2d 133, 142 (D. Mass. 2011)(internal citations omitted). Based on the undisputed facts, I find, as a matter of law, that Shri Gayatri cannot establish that Charter Oak did or failed to do or say something which induced Shri Gayatri, in reasonable reliance thereon, to refrain from fulfilling its obligation to repair or replace the damaged Property within two years of the Loss.

Therefore, summary judgment shall enter for Charter Oak on Count I of the Complaint (for declaratory judgment) and on its Counterclaim (for declaratory judgment).

### Shri Gayatri's Claim For Violation Of The Covenant Of Good Faith And Fair Dealing

As to Shri Gayatri's claim against Charter Oak for breach of the covenant of good faith and fair dealing, on the record before me, I find that as a matter of law, the undisputed facts fail to establish a lack of good faith on the part of Charter Oak. Therefore, summary judgment shall enter for Charter Oak on this claim.

### Shri Gayatri's Chapter 93A claim

Shiri Gayatri asserts that Charter Oak violated Chapter 93A by engaging in unfair or deceptive acts or practices in processing its claim and violated the covenant of good faith and fair dealing.  More specifically, Shri Gayatri alleges that Charter Oak delayed the settlement process by making unduly low payments, relied solely on Xactimate estimate rather than obtaining a contractor's bid, failed to consider the Tocci bid and refused to engage a contractor to either provide or substantiate its bid. Shri Gayatri also asserts that Charter Oak engaged in unfair settlement practices when it refused to extend the Policy's two year limitation period for repairing or preplacing the damaged property.

That the reference panel ultimately found that Charter Oak underpaid Shri Gayatri's claim in and of itself does not constitute an unfair settlement practice. On the contrary, considering the totality of the circumstances, including Shri Gayatri's failure to provide Charter Oak with timely estimates and/or invoices of its losses, and its continued failure to timely or adequately contest Charter Oak's valuation of the damages to the Property and its lost business income, I do not find that Charter Oak's underpayment constituted an unfair settlement practice. Additionally, as discussed above, I find that Shri Gayatri was responsible for the long delays in settling this claim. Moreover, on the record before me, I do not find that there is a genuine issue

of disputed fact as to whether Charter Oak's conduct prevented Shri Gayatri from rebuilding the Property: clearly it did not.   The evidence is that Shri Gayatri made no attempt to make *any* permanent repairs to the Property and its attempt to attribute this to the fact that Charter Oak provided it insufficient funds is unsupported by the record. Additionally, Shri Gayatri did not even request an extension of the two year limitation until May 20, 2013. Charter Oak's refusal to consider extending the deadline for an indeterminate, but certainly lengthy period, as a matter of law, did not constitute an unfair settlement practice.[6]  Shri Gayatri also contends that Charter Oak engaged in unfair and/or deceptive settlement practices by: failing to adequately compensate it for damage from Tropical Storm Irene and the October Snowstorm and by refusing to acknowledge that those claims were to be included in the reference; by failing to to engage a contractor to obtain an estimate; by "misrepresenting" Policy provisions; by causing the termination of its Days Inn franchise agreement; and by estimating an unduly short restoration period.   As to these claims, I find that Charter Oak's reply brief accurately states the law and factual basis for denying Shri Gayatri's Chapter 93A claim based on such alleged misconduct. For the reasons set forth above, I find that Charter Oak is entitled to summary judgment on Shri Gayatri's Chapter 93A claim.

## Conclusion

Defendant's Motion For Summary Judgment (Docket No. 47) is hereby ***granted***.

Judgment shall enter against the Plaintiff, Shri Gayatri, LLC, on its claims against Defendant,

---

[6] In support of its contention that Charter Oak's failure to agree to an extension of the Policy's two year limitation period constitutes an unfair settlement practice, Shri Gayatri relies primarily on a statement by David Reed, a representative of Travelers Insurance, Charter Oak's parent company. Reed testified at his deposition that he did not recall agreeing in any prior cases to extend the policy requirement that repairs be made within two years. Shri Gayatri attempts to impeach Reed's deposition testimony by referencing multiple agreements to extend the deadline for repairs which Reed approved over a decade before for another insured. However, there is nothing in the record which would permit the Court to find that the circumstances of this case are similar to the case in which Reed approved an extension. On the contrary, based on the evidence presented by Shri Gayatri, the circumstances were markedly different. Moreover, Reed was not involved in the decision to deny an extension in this case.

The Charter Oak Fire Insurance Company. Judgment shall enter in favor of Defendant on its

Counterclaim.


 /s/ Timothy S. Hillman
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**